UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
------------------------------------------------------------------X
AVRAHAM SISSO, individually and as legal
representative of the Estate of ROZANA SISSO
1282 Cobridge Drive
Rochester Hills, MI 48306

CHARLES SISSO
25/1 Ben-Guryon Street
Gan Yavne 70800
Israel

TOBI BARDA                                          Civil Action No.:
3 Habrosh Street
Gan Yavne 70800                                     **COMPLAINT**
Israel

GALIT SIDER
2 Hanoter Street
Ramat Hashron 47210
Israel

MOSHE SISSO
5/2 Cook Street
Gav Yavne 70800
Israel

        Plaintiffs,

- against -

THE ISLAMIC REPUBLIC OF IRAN,
Ministry of Foreign Affairs
Khomeini Ave. United Nations St.
Tehran, Iran

THE IRANIAN MINISTRY OF INFORMATION
AND SECURITY,
Pasdaran Ave. Golestan Yekom
Tehran, Iran

and

Harakat al-Muqawama al-Islamiyya (also known

as the "Islamic Resistance Movement" or HAMAS)
Al-Yarmouk Refugee Camp
Damascus, Syria

c/o Sheik Hassan Yousef
Ramallah, West Bank

                Defendants.
----------------------------------------------------------------X

## INTRODUCTION

Plaintiffs, by and through counsel, bring this action seeking damages arising out of the September 19, 2002 suicide bombing in downtown Tel Aviv, Israel. Plaintiffs seek judgment against defendants the Islamic Republic of Iran, the Iranian Ministry of Information and Security, and HAMAS jointly and severally, and in support of their Complaint allege as follows:

### I.

### JURISDICTION AND VENUE

1. This complaint is brought by the legal representative, husband, and children of decedent Rozana Sisso, for damages against the Islamic Republic of Iran and its agents, and against the HAMAS terrorist organization, for wrongful death and related violations of Israeli law and federal common law, and for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

2. Jurisdiction over this matter and over defendants is predicated upon 18 U.S.C. § 1961 et seq., 28 U.S.C. §§ 1330, 1331, 1367, 1602, 1605(a)(7), 1606, and 28 U.S.C.A. § 1605 note.

2

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides that a civil action against a foreign state may be brought in this Court.

## II.

## THE PARTIES

4. Plaintiff Avraham Sisso, a United States citizen, is a surviving son and the administrator of the Estate of decedent Rozana Sisso. Avraham Sisso resides in the State of Michigan. Ms. Sisso, an Israeli citizen and permanent resident of the United States, was killed on September 19, 2002, in the terrorist bombing of a passenger bus in Tel Aviv, Israel (the "Tel Aviv bombing").

5. Plaintiff Charles Sisso, an Israeli citizen and permanent resident of the United States, is the surviving husband of Rozana Sisso.

6. Plaintiff Tobi Barda, an Israeli citizen, is a surviving daughter of Rozana Sisso.

7. Plaintiff Galit Sider, an Israeli citizen, is a surviving daughter of Rozana Sisso.

8. Plaintiff Moshe Sisso, an Israeli citizen, is a surviving son of Rozana Sisso.

9. Defendant the Islamic Republic of Iran is, and at all relevant times was, a foreign state within the meaning of 28 U.S.C. § 1603 and designated as a state sponsor of terrorism pursuant to section 6(j) of the Export Administration Act of 1979 (50 U.S.C.App. § 2405(j)).

10. Defendant the Iranian Ministry of Information and Security ("MOIS"), is, and at all relevant times was, the Iranian intelligence service, and functions both inside and beyond Iranian territory. At all relevant times, the MOIS, acting as an agent of the Islamic Republic of Iran, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C.A. § 1605 note.

11. Defendant HAMAS is, and at all relevant times was, a political and paramilitary Islamic organization in Israel and surrounding territories which has engaged in a campaign of terrorism for several years with the support and assistance of Iran and the MOIS.

### III.

### FACTUAL ALLEGATIONS

12. On September 19, 2002, at approximately 1:00 p.m. local time, a HAMAS terrorist operative boarded a public bus at the corner of Allenby Street and Rothschild Boulevard, a busy shopping area in downtown Tel Aviv, Israel. Immediately after boarding the bus, the HAMAS operative detonated a bomb, killing six and injuring more than sixty people. The blast, which occurred across the street from Tel Aviv's main temple, the Great Synagogue, blew the roof off the bus, shattered its windows, and lifted the bus off the ground. The front end of the bus was mangled and blackened. Eyewitness accounts described bodies flying through the shattered windows of the bus, severed arms and legs on the ground, and in one instance, a beating heart on the sidewalk.

13. Among those killed by the suicide bombing was Rozana Sisso, a 63-year-old citizen of Israel who owned a clothing business located near the site of the bombing.

4

14. Ms. Sisso had just left her store to go to lunch, and was standing on the street corner next to the bus, when the bus exploded. The violent force of the explosion killed Ms. Sisso immediately.

15. Ms. Sisso is survived by her husband, Charles Sisso, and her four children, Tobi Barda, Galit Sider, Avraham Sisso, and Moshe Sisso.

16. Shortly after the Tel Aviv bombing, the terrorist organization HAMAS admitted responsibility for the attack. The Tel Aviv Police subsequently determined that Mahmud Hamad Sharita planned the attack, Ashraf Monir Zagir (also known as Zayar Ashraf) assisted in the attack, and Iyad Na'im Tubhi (also known as Iyad Radad) carried out the attack. These three individuals were affiliated with HAMAS at the time of the attack. On June 8, 2003, Zayar Ashraf was sentenced to six consecutive life terms by the Jerusalem District Court for his role in the Tel Aviv bombing.

17. The defendant HAMAS was established by Islamic militants in 1987. HAMAS views Israel and the United States as the greatest enemies of Islam. HAMAS opposes a peaceful resolution of the Middle East conflict; the HAMAS charter, first published in 1988, states that "There is no solution to the Palestinian problem except by Jihad," or violent struggle against Israel and the West.

18. Since the late 1980's, HAMAS has had extensive operations in the United States. During that time, HAMAS has maintained a significant organizational presence, including senior leadership, in the United States, and has used U.S. banks to deposit and transfer funds to HAMAS members and related organizations in the United States and abroad.

19. In the early 1980's, the defendant Islamic Republic of Iran exported its Islamic revolution to other countries by providing material support to militant Islamic organizations outside Iran. As part of this policy, Iran developed a close relationship with HAMAS, which led to an operational alliance. The shared goal of Iran and HAMAS is Islamic revolution through *jihad*.

20. Relations between Iran and HAMAS were formalized in 1988, when Iran agreed to HAMAS' request to establish an official representation in Iran. Since that time, HAMAS has stationed an "ambassador" in Iran.

21. Iran provides terrorist training and economic assistance to HAMAS through its agent, the MOIS. Over the past decade, Iran has provided HAMAS with tens of millions of dollars in financial support and has provided terrorist training to hundreds of HAMAS operatives. This Court found, in Eisenfeld v. Islamic Republic of Iran, 172 F. Supp. 2d 1 (D.D.C. 2000), that HAMAS receives "massive material and technical support from . . . The Islamic Republic of Iran," including monthly financial support of $15,000,000. Id. at 10.

22. At all relevant times, defendant Islamic Republic of Iran provided defendant HAMAS with material support and resources within the meaning of 28 U.S.C. § 1605(a)(7), in order to facilitate and advance the execution of terrorist attacks by HAMAS.

23. The material support and resources provided by defendant Iran to defendant HAMAS within the meaning of 28 U.S.C. § 1605(a)(7) include the following: military and other training, training bases, facilities for storing weapons and explosives, safe haven, lodging, communications equipment, financial services (including banking and wire transfer services), means of transportation, and essential utilities. HAMAS and its operatives

used the training and facilities provided by defendant Islamic Republic of Iran to establish and maintain a leadership command and operational infrastructure.

24. The MOIS facilitates the Islamic Republic of Iran's provision of funds, training and direction to HAMAS for its terrorist activities in Israel and surrounding territories, including the actions related to the Tel Aviv bombing. This Court repeatedly has held the Islamic Republic of Iran and MOIS liable to victims of state-sponsored terrorism, particularly for terrorist acts carried out by HAMAS in Israel. See, e.g., Campuzano v Islamic Republic of Iran, 281 F. Supp. 2d 258 (D.D.C. 2003); Stern v. Islamic Republic of Iran, 271 F. Supp. 2d 286 (D.D.C. 2003); Weinstein v. Islamic Republic of Iran, 184 F. Supp. 2d 13 (D.D.C. 2002); Eisenfeld v. Islamic Republic of Iran, 172 F. Supp. 2d 1 (D.D.C. 2000).

25. At all relevant times the MOIS, as an agent of the defendant Islamic Republic of Iran, provided material support and resources to HAMAS, within the meaning of 28 U.S.C.§ 1605(a)(7) and 28 U.S.C.A. § 1605 note, by providing HAMAS with funding, direction and training for its terrorist activities. In providing such material resources and support to HAMAS, the MOIS was acting within the scope of its agency.

26. At all relevant times, defendant Islamic Republic of Iran and the MOIS provided training to HAMAS and its operatives by and through the actions of other terrorist organizations which received material support and resources from defendants Islamic Republic of Iran and MOIS.

27. At all relevant times, defendants Iran and MOIS provided HAMAS and its operatives with lodging, safe haven, and shelter, in order to prevent HAMAS and its operatives from being apprehended and to permit them to conduct their terrorist activities freely.

28. Decedent Rozana Sisso was killed as a result of a bomb detonated by a HAMAS terrorist operative acting with the material support, resources, and sponsorship of the Islamic Republic of Iran, through its agent the MOIS, acting within the scope of its agency, office, and employment.

29. Defendants' actions were willful, malicious, intentional, reckless and unlawful and were the proximate cause of the death of decedent Rozana Sisso.

30. At all relevant times, Charles Sisso was the spouse, and Tobi Barda, Galit Sider, Avraham Sisso, and Moshe Sisso were the children, of decedent Rozana Sisso. At the time of her death, decedent Rozana Sisso left Charles Sisso, Tobi Barda, Galit Sider, Avraham Sisso, and Moshe Sisso as her only distributees.

31. Prior to her death, decedent Rozana Sisso was 63 years of age, industrious, and enjoying good health.

32. The murder of Rozana Sisso was an act of extrajudicial killing within the meaning of 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note.

33. Pursuant to 28 U.S.C. § 1605(a)(7) and 28 U.S.C. § 1605 note, defendants the Islamic Republic of Iran and the MOIS, through their actions which resulted in the extrajudicial killing of Rozana Sisso, forfeited their right to claim sovereign immunity from suit in U.S. court.

## FIRST CLAIM
## AS AGAINST ALL DEFENDANTS
## (ASSAULT)

34. Plaintiffs incorporate by reference the allegations in ¶¶ 1- 33 as if fully set forth herein.

35. As described herein, the defendants intentionally used lethal force, in the form of the Tel Aviv bombing, against decedent Rozana Sisso without her consent, thereby committing an assault under § 23 of the Israeli Civil Wrongs Ordinance (New Version) (hereinafter "ICWO").

36. As a result of the willful, malicious, intentional and reckless acts of HAMAS terrorist operatives, whose acts were funded, sponsored, supported and directed by defendant the Islamic Republic of Iran, by its own conduct and through its agent, defendant MOIS, decedent Rozana Sisso suffered the loss of life and of life's pleasures, loss of earnings and earnings capacity, and other damages.

37. By reason of the foregoing and pursuant to the ICWO, the decedent Rozana Sisso was damaged in an amount to be determined at trial, but no less than three million dollars ($3,000,000), for which defendants are jointly and severally liable.

## SECOND CLAIM
## AS AGAINST ALL DEFENDANTS
## (DEATH CAUSED BY CIVIL WRONG)

38. Plaintiffs incorporate by reference the allegations in ¶¶ 1- 33 as if fully set forth herein.

39. As a result of the willful, malicious, intentional and reckless acts of HAMAS terrorist operatives, whose acts were funded, sponsored, supported and directed by defendant the Islamic Republic of Iran, by its own conduct and through its agent, defendant MOIS, decedent Rozana Sisso suffered loss of life and of life's pleasures, loss of earnings and earnings capacity, and other damages.

40. Defendants' civil wrong of assault as defined under the ICWO and as described more fully above caused the death of decedent Rozana Sisso.

41. Had she survived, decedent Rozana Sisso would have been entitled to compensation under the ICWO for bodily injury caused by the defendants' assault.

42. Pursuant to the ICWO, decedent Rozana Sisso's surviving spouse and children are entitled to compensation from the defendants, who are jointly and severally liable.

43. As a result of the death of decedent Rozana Sisso, her surviving spouse and children have been and will be deprived of future aid, assistance, services, financial support, and other pecuniary loss, and will also incur expenses in the settlement of the Estate of decedent Rozana Sisso.

44. By reason of the foregoing, the surviving spouse and children of decedent Rozana Sisso, Plaintiffs Charles Sisso, Tobi Barda, Galit Sider, Avraham Sisso, and Moshe Sisso, have been damaged in an amount to be determined at trial, but no less than three million dollars ($3,000,000), for which the defendants are jointly and severally liable.

### THIRD CLAIM
### AS AGAINST ALL DEFENDANTS
### (LOSS OF SOLATIUM)

45. Plaintiffs incorporate by reference the allegations in ¶¶ 1- 33 as if fully set forth herein.

46. As a result of the death of decedent Rozana Sisso, which was caused by the actions of the defendants described herein, plaintiff Avraham Sisso has been deprived of the services, society, and consortium of his deceased mother, and has suffered severe mental anguish, bereavement and grief, and injury to his feelings.

47. Defendants the Islamic Republic of Iran and the MOIS are liable to plaintiff Avraham Sisso in his individual capacity for loss of solatium. See Stethem v. Islamic Republic of Iran, 201 F. Supp. 2d 78, 89 (D.D.C. 2002).

48. By reason of the foregoing, plaintiff Avraham Sisso has been damaged in an amount to be determined at trial, but no less than fifteen million dollars ($15,000,000).

49. Defendants' conduct as described herein was extreme and outrageous, wanton, willful and malicious, and constitutes a threat to the public at large. Plaintiff Avraham Sisso is therefore entitled to an award of punitive damages in an amount to be determined at trial.

## FOURTH CLAIM
## AS AGAINST ALL DEFENDANTS
## (RACKETEERING)

50. Plaintiffs incorporate by reference the allegations in ¶¶ 1- 33 as if fully set forth herein.

51. In the late 1980's, defendants Iran and HAMAS entered into a "mutually beneficial operational alliance" having the joint goal of "Islamic revolution through jihad, or violent and unrelenting struggle against Israel and the West." Stern, 271 F. Supp. 2d at 291. The Iran-HAMAS alliance constitutes an "enterprise" within the meaning of 18 U.S.C. 1961(4), namely, a group of individuals and entities that are associated in fact.

52. The enterprise alleged herein engaged in, and its activities affected, interstate and foreign commerce. The Tel Aviv bombing and related terrorist attacks planned and carried out by the defendants and other members of the enterprise have caused physical and economic injuries to nationals of multiple countries, including citizens and residents of the

United States, and in the case of Rozana Sisso, a permanent resident alien of the United States. Israeli civilians, including the decedent Rozana Sisso, have been the intended targets of these attacks.

53.  The defendants Islamic Republic of Iran, MOIS, and HAMAS, are "persons" within the meaning of 18 U.S.C. 1961(3), who are, and at all times relevant to this action were, associated with the enterprise alleged herein.

54.  The defendants Islamic Republic of Iran, MOIS, and HAMAS conducted and participated, directly and indirectly, in the conduct of the affairs of the enterprise alleged herein through a pattern of racketeering activity. This pattern of racketeering activity includes acts indictable under provisions listed in 18 U.S.C. § 2332b(g)(5)(B), relating to the bombing of public places and facilities and providing material support to terrorist organizations, as well as acts of murder, attempted murder, conspiracy to commit murder, and related fraudulent activities, such as the procurement of false identification documents, chargeable under State law and punishable by imprisonment for more than one year. These recurring criminal acts of Iran, the MOIS, and HAMAS are related by the shared goal of Islamic revolution through *jihad*. Several decisions by this Court illustrate the related and recurring terrorist acts supported by defendants Iran and MOIS, and carried out by HAMAS, in furtherance of this shared goal. See Campuzano, 281 F. Supp. 2d at 262; Stern, 271 F. Supp. 2d at 291-92; Weinstein, 184 F. Supp. 2d at 19; Eisenfeld, 172 F. Supp. 2d at 7.

55.  Decedent Rozana Sisso was injured in her business and property by reason of the defendants' conduct as described in paragraphs 50 through and including 54 above, and suffered damages in an amount to be determined at trial but no less than three times the amount

of three million dollars ($3,000,000), representing the amount of damages to decedent's business and property, as well as reasonable attorneys' fees.

*         *         *

## RELIEF REQUESTED

WHEREFORE, plaintiffs, as determined by the individual facts as specified herein, and in recognition of the outrageous and violent conduct of the defendants, respectfully request the following relief to be entered:

A. On the first claim, against all defendants, an amount to be determined at trial but no less than three million dollars ($3,000,000);

B. On the second claim, against all defendants, an amount to be determined at trial but no less than three million dollars ($3,000,000);

C. On the third claim, against defendants Islamic Republic of Iran and the MOIS, an amount to be determined at trial but no less than fifteen million dollars ($15,000,000), and against defendant MOIS, punitive damages in an amount to be determined at trial;

D. On the fourth claim, against all defendants, an amount to be determined at trial but no less than three times the amount of three million dollars ($3,000,000), as well as reasonable attorneys' fees;

E. On all claims, all costs and expenses of this action;

    F.  On all claims, such relief as the Court may deem just and proper.

    G.  Plaintiffs demand a trial by jury.

Respectfully submitted,

COVINGTON & BURLING

By: _____

Of Counsel:
Alan Vinegrad
(*Pro hac vice motion to be filed*)
COVINGTON & BURLING
1330 Avenue of the Americas
New York, NY 10019
(212) 841-1000
Attorneys for Plaintiffs

Mark Feldman (Bar No. 474943)
1201 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 662-6000
Attorneys for Plaintiffs

February 24, 2005