UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AVRAHAM SISSO, ET AL.,

Plaintiffs,

v.

ISLAMIC REPUBLIC OF IRAN, ET AL.,

Defendants.

Civil Action No.  05-394 (JDB)

MEMORANDUM OPINION

Plaintiffs in this civil action are the surviving husband and children of Rozana Sisso, a

sixty-three-year-old woman who was killed in a terrorist bus bombing in Tel Aviv, Israel, on

September 19, 2002.  Defendants are the Islamic Republic of Iran, the Iranian Ministry of

Information and Security ("MOIS"), and Harakat al-Muqawama al-Islamiyya, the jihadist

Palestinian militia more commonly known as Hamas (hereinafter "Hamas").  The complaint

alleges that each defendant was complicit in the bombing -- a brazen, midday suicide attack

purportedly carried out by three individuals at the behest of Hamas and with substantial support

from agents of the government of Iran -- and that each therefore is liable to plaintiffs for damages.

Plaintiffs advance claims under New Jersey tort law; the Antiterrorism Act of 1991 ("ATA"), 18

U.S.C. § 2333(a); and the Israeli Civil Wrongs Ordinance ("ICWO").  Now before the Court is

plaintiffs' motion for entry of default against defendants, who thus far have failed to appear to

defend against this action.  For the reasons that follow, the Court will grant plaintiffs' motion with

respect to all claims still pending, except those brought against Hamas under the ICWO; dismiss

without prejudice the ICWO claims against Hamas; and instruct the Clerk to record the defaults of

each defendant on the remaining claims.

## BACKGROUND

At approximately 1:00 p.m. on September 19, 2002, Rozana Sisso was standing on a street corner in downtown Tel Aviv, across the road from the city's Great Synagogue, when an alleged Hamas operative named Iyad Na'im Tubhi (a/k/a Iyad Radad) boarded a nearby public bus and detonated a bomb that he had been carrying.  Am. Compl. ¶¶ 12-16.  Mrs. Sisso, who owned a clothing store near the site of the bombing, was on her way to lunch at the time.  Id. at ¶¶ 13-14. She was one of six people killed by the explosion, which lifted the bus off the ground, blew apart its roof, shattered its windows, and scattered debris and body parts on the street and sidewalk.  Id. at ¶ 12.  Another sixty people were injured as a result of the bombing.  Id.

Rozana Sisso was survived by her husband, Charles Sisso, and her four children, Tobi Barda, Galit Sider, Avraham Sisso, and Moshe Sisso.  Id. at ¶ 15.  Within the Sisso family, only Avraham Sisso is a citizen of the United States -- a fact that is of some consequence to the claims advanced here.  The others are Israeli citizens.[1]  Nearly two and a half years after Rozana Sisso's murder, plaintiffs initiated this civil action against Iran, MOIS, and Hamas.  The complaint, as amended, asserts that defendants are vicariously liable for the damages caused by this terrorist act (specifically, the emotional anguish and loss of support that Rozana Sisso's murder caused her immediate family) because the bombing was carried out by Hamas members and those individuals were "acting with the material support, resources, and sponsorship of Iran, through its agent the

---

[1] The complaint asserts that both Rozana Sisso and her husband were citizens and residents of Israel, although they had "permanent resident" status in the United States (in common parlance, they held "Green Cards").  See Am. Compl. ¶¶ 4-5.

MOIS, acting within the scope of its agency, office, and employment." Id. at ¶ 28.[2]

Earlier this year, based on the representations of plaintiffs' counsel that service of process had been accomplished for all defendants and that the time prescribed by the Federal Rules of Civil Procedure for filing a responsive pleading had elapsed (or was about to elapse) without any appearance by defendants, the Court ordered plaintiffs to file (1) an amended complaint that -- consistent with prior rulings by this Court and the United States Court of Appeals for the District of Columbia Circuit in similar cases -- specified appropriate sources of law for the claims against Iran and MOIS, and (2) a motion for entry of default and a memorandum of law in support thereof that addressed, for each claim and claimant, the jurisdictional basis for the Court to impose liability on defendants. See Minute Order of January 13, 2006.[3]

In compliance with that order, plaintiffs filed a five-count amended complaint on March 31, 2006, along with the motion for entry of default that is the subject of this opinion. The amended complaint asserted the following five claims: (1) a claim by Avraham Sisso against the Iran defendants for intentional infliction of emotional distress, based on the law of New Jersey, the state where he was domiciled at the time of his mother's murder; (2) a claim for treble

---

[2] To the extent that plaintiffs will have to prove the merits of their claims before they can obtain a default *judgment* against some defendants, the evidence they present will have to provide support for a particular theory of vicarious liability (e.g., agency, civil conspiracy, or aiding and abetting), which plaintiffs thus far have not expressly articulated. See 28 U.S.C. § 1608(e) ("No judgment by default shall be entered ... against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court.").

[3] Although the entry of default (as opposed to the issuance of a default judgment) normally is a ministerial task for the Clerk of the Court, see Fed. R. Civ. P. 55(a), the Court directed plaintiffs to seek entry of default by motion because of the complexities associated with service of process in civil actions against foreign sovereigns and the fact that proper service is a prerequisite for the Court to obtain personal jurisdiction over a foreign state, see 28 U.S.C. § 1330(b).

damages by Avraham Sisso against Hamas, pursuant to the ATA; (3) a claim by Avraham Sisso, as the legal representative of the Estate of Rozana Sisso, against all defendants for assault under Section 23 of the ICWO; (4) a claim by Avraham Sisso, as the legal representative of the Estate of Rozana Sisso and on behalf of decedent's spouse and dependents, against all defendants for survivors' damages under Section 78 of the ICWO; and (5) individual claims by each of Rozana Sisso's children and her husband against Hamas for survivors' damages under Section 78 of the ICWO.  See Am. Compl. ¶¶ 34-70.  Following an inquiry from the Court about the legal status of the Estate of Rozana Sisso, plaintiffs acknowledged that Avraham Sisso lacked the requisite authorization to act on behalf of his mother's estate and voluntarily dismissed the third and fourth counts of the amended complaint -- thereby leaving only (1) Avraham Sisso's personal claim against Iran and MOIS under New Jersey law; (2) Avraham Sisso's personal ATA claim against Hamas; and (3) the ICWO Section 78 claims brought by Rozana Sisso's children and husband against Hamas.  See Pls.' Resp. to Order to Show Cause at 3.[4]

## STANDARD OF REVIEW

As a court of limited jurisdiction, a federal district court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001); see also Murphy Exploration and Prod. Co. v. U.S. Dep't of the Interior, 252 F.3d 473, 479 (D.C. Cir. 2001).  That means that this Court cannot overlook a potential defect in its jurisdiction simply because the parties fail to

---

[4] Because of this voluntary dismissal, the Court need not decide whether an estate may maintain a civil action against a foreign sovereign pursuant to 28 U.S.C. § 1605(a)(7), notwithstanding the decedent's status as a foreign national, when the estate's legal representative is a U.S. citizen and all other jurisdictional requirements are met.

call it to the Court's attention.  Nor may the Court "presume the existence of jurisdiction in order

to dispose of a case on other grounds."  <u>Tuck v. Pan Am. Health Org.</u>, 668 F.2d 547, 549 (D.C.

Cir. 1981).  In all cases, this independent obligation means that the Court must satisfy itself that it

possesses subject-matter jurisdiction to rule on the merits of the claim.  <u>See</u> Fed. R. Civ. P.

12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks

jurisdiction of the subject matter, the court shall dismiss the action.").  Furthermore, in cases

where a defendant has not appeared, the Court is obliged to consider whether it properly has

jurisdiction over that person or entity.  <u>See</u> <u>Mwani v. bin Laden</u>, 417 F.3d 1, 6 (D.C. Cir. 2005)

("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against

an absent defendant."); <u>Estates of Ungar ex rel. Strachman v. Palestinian Authority</u>, 304 F. Supp.

2d 232, 247 (D.R.I. 2004) ("[W]hen judgment is sought against parties who have failed to plead or

otherwise defend, a district court has an affirmative duty to assure itself that it has jurisdiction

over both the subject matter and the parties.").  For purposes of these inquiries, the Court must

accept all of plaintiffs' factual allegations as true under the present circumstances.[5]

---

[5] Although a defendant is entitled to challenge the *factual* underpinnings of subject-matter
or personal jurisdiction, <u>see, e.g.</u>, <u>Phoenix Consulting, Inc. v. Republic of Angola</u>, 216 F.3d 36, 39
(D.C. Cir. 2000), defendants' failure to appear here precludes the Court, *at this stage of the
litigation*, from making factual findings that are inconsistent with the allegations of the complaint.
Hence, the Court is limited to considering jurisdiction as a matter of law.  <u>See</u> <u>Price v. Socialist
People's Libyan Arab Jamahiriya</u>, 294 F.3d 82, 93 (D.C. Cir. 2002) ("When reviewing a plaintiff's
unchallenged factual allegations to determine whether they are sufficient to [give rise to
jurisdiction over claims against a foreign state], we assume those allegations to be true."); <u>Morris
v. Khadr</u>, 415 F. Supp. 2d 1323, 1332 (D. Utah 2006) ("[W]hen inquiring into its subject
matter jurisdiction before entering default judgment, the court should require only a *prima facie* showing
that subject matter jurisdiction exists.  And when deciding whether plaintiffs have made a *prima
facie* showing of subject matter jurisdiction, the court 'must construe all relevant allegations in the
light most favorable to the plaintiff.'").

**ANALYSIS**

**I.     Jurisdiction over the Iran Defendants and the Claim Against Them**

Before any civil action against a foreign state may proceed in a U.S. court, plaintiffs must

overcome the jurisdictional protections of the Foreign Sovereign Immunities Act ("FSIA").  See

28 U.S.C. § 1330; Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434

(1989) ("[T]he FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the

courts of this country[.]").[6]  The "interlocking provisions" of that statute, Mar. Int'l Nominees

Estab't  v. Republic of Guinea, 693 F.2d 1094, 1099 (D.C. Cir. 1982), compress subject-matter

jurisdiction and personal jurisdiction into a single, two-pronged inquiry:  (1) whether service of

the foreign state was accomplished properly, and (2) whether one of the statutory exceptions to

sovereign immunity applies.  See 28 U.S.C. §§ 1330(a)-(b); see also Mar. Int'l Nominees Estab't,

693 F.2d at 1099 ("[T]he absence of immunity is a condition to the presence of subject matter

jurisdiction. ... [And] a lack of subject matter jurisdiction also deprives the court of personal

jurisdiction[.]"); Price, 294 F.3d at 89 (observing that section 1330(b) provides that, "[i]f service

of process has been made under [section] 1608, personal jurisdiction over a foreign state exists for

every claim over which the court has subject matter jurisdiction," and section 1330(a), in turn,

"automatically confers subject matter jurisdiction whenever the state loses its immunity") (citation

omitted); Practical Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543, 1548 n.11 (D.C. Cir.

1987) (stating that, under the FSIA, "subject matter jurisdiction plus service of process equals

_____

[6] For jurisdictional purposes, Iran and MOIS are treated identically -- as the state itself.
See Dammarell v. Islamic Republic of Iran, 281 F.Supp. 2d 105, 200-02 (D.D.C. 2003) (Iran's
Ministry of Intelligence and Security is not an "agency or instrumentality" of the government); cf.
Roeder v. Islamic Republic of Iran, 333 F.3d 228, 234 (D.C. Cir. 2003) (Iran's Ministry of Foreign
Affairs "must be treated as the state of Iran itself rather than as its agent").

personal jurisdiction").[7]  In other words, the Court may not consider the merits of a claim against a foreign state unless proper service has been effectuated *and* one of the FSIA's enumerated exceptions to sovereign immunity applies to that claim.[8]  The Court therefore must determine whether, in this case, each of these two jurisdictional prerequisites has been satisfied with regard to Avraham Sisso's claim against Iran and MOIS.  As the following discussion explains, the Court concludes that the unchallenged facts relating to service and the unrebutted allegations of the complaint are sufficient to move this claim past the jurisdiction threshold.[9]

---

[7] The Constitution's due process clause imposes no limitation on a court's exercise of personal jurisdiction over a foreign state because a foreign state is not a "person" within the meaning of the Fifth Amendment.  See Price, 294 F.3d at 95-100.

[8] In addition to establishing subject-matter jurisdiction and personal jurisdiction, a plaintiff is obligated to "institute the action in a permissible forum," based on applicable venue statutes. Freeman v. Fallin, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).  "Generally speaking, venue must be established for each cause of action."  Washington v. Gen. Elec. Corp., 686 F. Supp. 361, 362 (D.D.C. 1988); see also City of New York v. Cyco.net, Inc., 383 F. Supp. 2d 526, 543 (S.D.N.Y. 2005).  This Court undoubtedly is a proper venue for plaintiffs' FSIA-based claims against Iran and MOIS, see 28 U.S.C. § 1391(f)(4), as well as for their Israeli-law claims against Hamas, see 28 U.S.C. § 1391(d).  The appropriate venue for the ATA claim, however, is a "district where any plaintiff resides," see 18 U.S.C. § 2334(a), which in this case would be the district in which Avraham Sisso resides (i.e., the Eastern District of Michigan), see Am. Compl. ¶ 4.  Nevertheless, where venue is proper for some, but not all, claims and where, as here, the claims arise out of the same core of operative facts, plaintiffs may rely on the doctrine of "pendent venue" to cure any venue defect.  See Washington, 686 F. Supp. at 362.  And, in any event, properly served defendants who fail to appear waive any objections to venue.  Hoffman v. Blaski, 363 U.S. 335, 343 (1960) ("A defendant, properly served with process by a court having subject matter jurisdiction, waives venue by failing seasonably to assert it, or even simply by making default.").

[9] It is important to keep in mind that the Court's conclusion at this point is only that the allegations of the complaint, *if proven*, are legally sufficient to support jurisdiction.  In that sense, the jurisdictional finding is provisional.  It is possible that, in making factual findings on the merits of the claim against Iran and MOIS, as required under the FSIA prior to entry of a default judgment, the Court's legal conclusion regarding jurisdiction may change -- for example, if the evidence fails to support (or contradicts) a fact that is essential to jurisdiction.

A.      **Service of Process**

The FSIA establishes the requirements for proper service upon a foreign state or a political subdivision, agency, or instrumentality of a foreign state.  See Fed. R. Civ. P. 4(j)(1).  Section 1608 of the FSIA prescribes four methods for serving legal process, in descending order of preference -- meaning that a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on.  See 28 U.S.C. § 1608(a).  The preferred method of service is delivery of the summons and complaint "in accordance with any special arrangement for service between the plaintiff and the foreign state."  28 U.S.C. § 1608(a)(1).  If, however, no such arrangement exists, then the statute permits delivery of the summons and complaint "in accordance with an applicable international convention on service of judicial documents."  28 U.S.C. § 1608(a)(2).  If neither of the foregoing methods is available, then the plaintiff may send the summons, complaint, and a notice of suit (together with a translation of each into the official language of the foreign state) "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned."  28 U.S.C. § 1608(a)(3).  Finally, if mailed service cannot be accomplished within thirty days, then the statute permits the plaintiff to request that the clerk of the court dispatch two copies of the summons, complaint, and notice of suit (together with a translation of each into the foreign state's official language) to the Secretary of State, who then "shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted."  28 U.S.C. § 1608(a)(4).  "Strict adherence to the terms of 1608(a) is required" in this Circuit.  Transaero, Inc. v. La Fuerza Aerea Boliviana, 30 F.3d 148,

154 (D.C. Cir. 1994).

Because plaintiffs had no "special arrangement" for service with Iran and because Iran is not party to an "international convention on service of judicial documents," the preferred method of service is provided by section 1608(a)(3) -- that is, any form of mail requiring a signed receipt. In accordance with this statutory requirement, plaintiffs attempted service by certified mail, but the package was never delivered because the Iranian Ministry of Foreign Affairs would not sign the return receipt.  Pls.' Mem. in Supp. of Mot. for Entry of Default at 3 (citing affidavit of Karen Kizer and attached exhibits).  After having waited more than thirty days for confirmation of mail delivery, plaintiffs pursued service by diplomatic means, pursuant to section 1608(a)(4) and consistent with State Department procedures for accomplishing such service on Iran, a country with which the United States has no official relations.  Id. at 3-4.  On October 28, 2005, the Clerk of the Court dispatched copies of the summons, complaint, and notice of suit -- all translated into Farsi, the official language of Iran -- to the State Department, which, in turn, transmitted the documents to the Foreign Interests Section of the Embassy of Switzerland in Tehran, Iran.  Id. The Swiss embassy delivered the documents to the Iranian Ministry of Foreign Affairs, under cover of diplomatic notes, on December 12, 2005, and the State Department filed proof of such service with the Court on January 18, 2006.  See Docket Entry No. 6.  In short, plaintiffs have done all that is required of them under section 1608 to effectuate service on Iran and MOIS.

### B.       Exception to Sovereign Immunity

Because plaintiffs have established proper service of process on the Iran defendants, sovereign immunity is the only remaining jurisdictional obstacle that might prevent the Court from proceeding to entertain a motion for judgment by default (i.e., to consider the merits of the

claim, see 28 U.S.C. § 1608(e)).  For the reasons that follow, the Court concludes that the alleged conduct of Iran and MOIS, if proven, would forfeit any entitlement to sovereign immunity that they otherwise would have with regard to Avraham Sisso's emotional-distress claim.

As explained above, for this Court to have jurisdiction over the Iran defendants and the claim against them, the claim must fall within one of the exceptions to sovereign immunity enumerated in section 1605 of the FSIA.[10]  Plaintiffs contend that section 1605(a)(7) is applicable to Avraham Sisso's claim against Iran and MOIS for intentional infliction of emotional distress. Enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996, section 1605(a)(7) of the FSIA removes the immunity of foreign states (as well as their agents and instrumentalities)

---

[10] Although the "restrictive view of sovereign immunity reflected in the FSIA" places on the *defendant* the "burden of proving that the plaintiff's allegations do not bring its case within a statutory exception to immunity," Phoenix Consulting, Inc., 216 F.3d at 40, that does not relieve the *plaintiff* of his burden to establish that the Court has jurisdiction over the subject matter (which, in cases against foreign governments, requires pleading -- and eventually proving -- facts sufficient to overcome sovereign immunity).  Nor does it relieve the Court of its independent "obligation to examine the source of [its] own power," Murphy Exploration, 252 F.3d at 479, before acting in a case such as this, where a potentially immune defendant has been served and failed to respond.  In other words, although the burden described in Phoenix Consulting creates a rebuttable presumption that sovereign immunity should be denied, that evidentiary presumption arises only when the sovereign defendant "makes a 'conscious decision to take part in the litigation'" (i.e., submits to the jurisdiction of the court for the limited purpose of challenging jurisdiction).  See 216 F.3d at 39.  When the sovereign defendant defaults, the Court must examine the legal sufficiency of the plaintiff's assertion that an exception to sovereign immunity applies.  Were that not the case, jurisdiction would spring from mere default, without regard to whether the defendant's conduct satisfied one of the immunity exceptions of section 1605.  Such a result not only would be difficult to square with the language and structure of section 1605, but it also would appear to conflict with the rule that a defendant is "always free to ignore the judicial proceedings, risk a default judgment, and then *challenge that judgment on jurisdictional grounds* in a collateral proceeding."  See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706 (1982) (emphasis supplied); Mwani, 417 F.3d at 7-8 (same).  If ignoring judicial proceedings effectively *conferred jurisdiction* over foreign states and claims against them, the rule permitting collateral attacks on jurisdictional grounds would largely be a dead letter for those defendants.  Nothing in Phoenix Consulting supports that result.

in any civil action in which

> money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources ... for such an act if such act or provision of material support is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency ....

28 U.S.C. § 1605(a)(7).  The statute, however, further provides that

> *the court shall decline to hear a claim under this paragraph* ... if the foreign state was not designated as a state sponsor of terrorism ... at the time the act occurred, unless later so designated as a result of such act ... [or,] even if the foreign state is or was so designated, if ... the act occurred in the foreign state against which the claim has been brought and the claimant has not afforded the foreign state a reasonable opportunity to arbitrate the claim ... [or] neither the claimant nor the victim was a national of the United States ... when the act upon which the claim is based occurred.

Id. (emphasis supplied).

The requirements for applying section 1605(a)(7) certainly are satisfied here.  Starting first with the provisions of the declination clause, the Court sees no basis for declining to exercise jurisdiction over Avraham Sisso's claim against Iran and MOIS.  Iran was a designated state sponsor of terrorism at the time of Rozana Sisso's murder;[11] the bus bombing did not occur within Iran's territory, so there was no need for plaintiffs to afford Iran an opportunity for arbitration; and Avraham Sisso fulfills the requirement that either the claimant or the victim be a United States national at the time when the act upon which the claim is based occurred, see Am. Compl. at ¶ 4.

Turning next to the question whether the acts attributed to Iran and MOIS by the amended complaint, if proven, would satisfy the requirements for lifting sovereign immunity, the Court

---

[11] On January 19, 1984, President Reagan designated Iran as a state sponsor of terrorism in response to its role in a number of terrorist acts in Lebanon, including the April 18, 1983, bombing of the United States Embassy in Beirut.  Dammarell v. Islamic Republic of Iran, 404 F. Supp. 2d 261, 273 (D.D.C. 2005).  Iran has ever since remained on the State Department list of state sponsors of terrorism.  See 22 C.F.R. § 126.1(d) (2006); 31 C.F.R. § 596.201 (2006).

finds the allegations to be sufficient.  For starters, Avraham Sisso's claim against Iran and MOIS

for intentional infliction of emotional distress plainly qualifies as a claim that seeks money

damages for personal injury.  Furthermore, the amended complaint alleges that Avraham Sisso's

injury was caused by the provision of material support or resources for an act extrajudicial killing.

It is clear that Rozana Sisso and the other victims of the Tel Aviv bus bombing were deliberately

targeted for death and that such deaths were "not authorized by a previous judgment pronounced

by a regularly constituted court affording all judicial guarantees," thus qualifying the bombing as

an act of "extrajudicial killing," as defined by the Torture Victim Protections Act ("TVPA"), 28

U.S.C. § 1350 note, which is incorporated by reference in the FSIA.  See 28 U.S.C. § 1605(e).

Just as clearly, the amended complaint alleges that Iran provided "material support or resources"

for acts of extrajudicial killing by supplying "terrorist training ... to [Hamas] through ... the MOIS"

as well as "tens of millions of dollars in financial support" to the Hamas terrorist network.  See

Am. Compl. ¶ 21; see also U.S. Department of State, Office of the Coordinator for

Counterterrorism, Country Reports on Terrorism (Apr. 27, 2005), at

http://www.state.gov/s/ct/rls/45394.htm (describing Hamas as "[r]eceiv[ing] some funding from

Iran").[12]  Moreover, given the absence of any challenge to the complaint by Iran or MOIS, the

---

[12] Section 1605(a)(7) adopts the meaning of "material support or resources" in 18 U.S.C. § 2339A, which defines "material support or resources" as

> any property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel ..., and transportation, except medicine or religious materials.

18 U.S.C. § 2339A(b).  Although this Court has held that allegations of material support must be sufficiently detailed to put defendants on notice of the specific misconduct with which they are charged, see Owens v. Republic of Sudan, 374 F.Supp. 2d 1, 15 (2005) (finding that a complaint was "simply too conclusory to satisfy § 1605(a)(7)"), the Court will not demand such pleading

Court will assume at this preliminary stage of the litigation that plaintiffs can establish a plausible

causal link between the alleged material support and the injuries underlying the claims, as

required for jurisdiction under section 1605(a)(7).  See Kilburn, 376 F.3d at 1129.[13]  Accordingly,

the Court concludes that the allegations of the complaint, if proven, would abrogate any right that

Iran or MOIS otherwise would have to claim sovereign immunity in U.S. courts.

Given that plaintiffs have properly served the foreign-sovereign defendants, that those

defendants have failed to respond, and that there is no evident deficiency in the amended

complaint with regard to personal jurisdiction or subject-matter jurisdiction (in light of the FSIA's

revocation of sovereign immunity for foreign governments who sponsor acts of terrorism against

U.S. citizens), the Court will direct the Clerk to enter defaults in this civil action against

defendants Iran and MOIS, pursuant to Rule 55(a) of the Federal Rules of Civil Procedure.

## II.    Personal Jurisdiction over Hamas

Having determined that the Court possesses both subject-matter jurisdiction and personal

jurisdiction over the claim against Iran and MOIS, the Court must next consider whether it has

---

specificity where defendants have not appeared to challenge the sufficiency of the complaint.  Nor
will the Court require plaintiffs to allege (or, for that matter, prove) that the material support or
resources went *directly* to the particular act that gave rise to the claim.  See Kilburn v. Socialist
People's Libyan Arab Jamahiriya, 376 F.3d 1123, 1130-31 (D.C. Cir. 2004).

[13] The apparent rationale for the *jurisdictional* causation requirement -- ameliorating
concerns that a foreign sovereign will be put to the inconvenience of mounting a merits defense
against a claim that is based on the attenuated effects of its actions -- is inapplicable where, as
here, the foreign-state defendant has not appeared.  Furthermore, because causation is a
substantive element of any tort claim and 28 U.S.C. § 1608(e) requires that the "claimant
establish[] his claim or right to relief by evidence satisfactory to the court," there is little risk that a
defaulting foreign state will end up being held liable for overly remote consequences.  See
Kilburn, 376 F.3d at 1130 ("Whatever the ultimate source [of plaintiff's cause of action] may be, it
will no doubt carry with it -- as a matter of substantive law -- its own rules of causation.").

personal jurisdiction over defendant Hamas for the claims lodged against it.[14]  If it does, the Court

must grant plaintiffs' motion for entry of default against Hamas.  As the following discussion

demonstrates, all of the prerequisites for the Court to obtain personal jurisdiction over Hamas are

satisfied here.  Notwithstanding that determination, however, the Court concludes that the claims

against Hamas *under Israeli law* may not proceed because Hamas lacks the capacity to be sued

under the law of the District of Columbia.  See Fed. R. Civ. P. 17(b).  Consequently, the Court

will order an entry of default against Hamas with respect to the ATA claim advanced by Avraham

Sisso and will dismiss the ICWO claims against Hamas.

### A.      Personal Jurisdiction over Hamas for ATA Claim

The need to establish personal jurisdiction in federal court is rooted in the Fifth

Amendment's guarantee of due process.  See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484

U.S. 97, 104 (1987) ("The requirement that a court have personal jurisdiction flows not from

Art[icle] III, but from the Due Process Clause.  ... It represents a restriction on judicial power not

as a matter of sovereignty, but as a matter of individual liberty.") (quoting Ins. Corp. of Ireland,

456 U.S. at 702) (ellipsis in original).  Personal jurisdiction comes in two distinct forms:  "(1)

general, 'all purpose' adjudicatory authority to entertain a suit against a defendant without regard

to the claim's relationship *vel non* to the defendant's forum-linked activity, and (2) specific

---

[14] There is no doubt that the Court has jurisdiction over the *subject matter* of plaintiffs' claims against Hamas.  The claim against Hamas under the ATA falls within this Court's original "federal question" jurisdiction, 28 U.S.C. § 1331, and the claims against Hamas under Israeli law satisfy the requirements for this Court's exercise of supplemental jurisdiction, under 28 U.S.C. § 1367, because they arise out of the same core of operative facts as the federal-law cause of action. Furthermore, there is no venue concern with respect to the claims against Hamas, because "[a]n alien may be sued in any district," 28 U.S.C. § 1391(d), and, in any event, as noted above, properly served defendants who fail to appear waive any objections to venue.

jurisdiction to entertain controversies based on acts of a defendant that touch and concern the

forum." Steinberg v. Int'l Criminal Police Org., 672 F.2d 927, 928 (D.C. Cir. 1981).  The causes

of action against Hamas advanced here implicate only the latter form, as there is no suggestion

that Hamas has a connection to the District of Columbia that would be strong enough to support

general jurisdiction.  See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,

415-16 (1984) (explaining that, where a defendant's contacts with the forum are "continuous and

systematic," the forum will have jurisdiction over any matter involving the defendant).

     For purposes of determining specific jurisdiction over an absent defendant, the law

demands only that the plaintiff make a *prima facie* showing of the grounds for exercising personal

jurisdiction.  See Mwani, 417 F.3d at 6-7.  The Supreme Court has said there are three essential

requirements for personal jurisdiction in federal civil actions:  (1) adequate "notice to the

defendant" of the suit; (2) "a constitutionally sufficient relationship between the defendant and the

forum;" and (3) "a basis for the defendant's amenability to service of summons" (e.g., consent,

physical presence within the political boundaries of the forum, or statutory "authorization for

service of summons on the defendant" outside the forum's borders).  Omni Capital, 484 U.S. at

104.  Accordingly, even if service is properly accomplished, the Court still must determine

whether there is any statutory basis for the defendant's amenability to service when, as in this case,

the defendant neither consents to suit in the forum nor can be found within the forum.  Id.;

Mwani, 417 F.3d at 8.

     Plaintiffs here point the Court to the long-arm provision of Rule 4(k)(2) of the Federal

Rules of Civil Procedure.  It provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United
> States, serving a summons ... is also effective, with respect to claims arising under federal

> law, to establish personal jurisdiction over the person of any defendant who is not subject
> to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2).  As the D.C. Circuit has summarized, Rule 4(k)(2) "permits a federal court to exercise personal jurisdiction over a defendant (1) for a claim arising under federal law, (2) where a summons has been served, (3) if the defendant is not subject to the jurisdiction of any single state court, (4) provided that the exercise of federal jurisdiction is consistent with the Constitution (and laws) of the United States."  Mwani, 417 F.3d at 10.  Where Rule 4(k)(2) applies, it reflects the entirety of the personal-jurisdiction inquiry because it establishes all three due-process requirements:  notice, a relationship with the forum, and authorization for service. Putting aside for the moment plaintiffs' Israeli-law claims and instead focusing solely on Avraham Sisso's federal-law claim (under the ATA), Rule 4(k)(2) is available to establish personal jurisdiction over Hamas so long as (1) plaintiffs served Hamas in a manner authorized by federal law, (2) Hamas is not otherwise "subject to the jurisdiction of the courts of general jurisdiction of any state," and (3) exercising personal jurisdiction over Hamas is not inconsistent with the constitution or federal statutes.

### 1.    Service of Hamas

Plaintiffs contend that Hamas should be treated as a foreign unincorporated association for purposes of determining the sufficiency of service.  "An unincorporated association is defined as a body of persons acting together and using certain methods for prosecuting a special purpose or common enterprise."  Estates of Ungar, 304 F. Supp. 2d at 258.  See also Fed. R. Civ. P. 17(b) (stating that a partnership or unincorporated association "may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States").  As was the district court in Estates of Ungar, this Court is satisfied

that Hamas qualifies as an unincorporated association.[15]  That being the case, service of process is

governed by the requirements for service on a corporation or association.  <u>See</u> Fed. R. Civ. P.

4(h).  Plaintiffs here opted to proceed under Rule 4(h)(2), which provides that service upon an

association "in a place not within any judicial district of the United States" shall be accomplished

in any manner prescribed by Rule 4(f) for service of individuals in foreign countries (other than

personal delivery).  <u>See</u> Fed. R. Civ. P. 4(h)(2).[16]  Consistent with Rule 4(f)(1) and the provisions

of the Hague Convention incorporated thereby, plaintiffs served a copy of the summons and

complaint, translated into Arabic, on the Director of the Courts of the State of Israel, which

handles requests for service of process in the disputed West Bank territories.  Israeli authorities

thereafter served the documents on Sheik Hassan Yousef, a Hamas leader in the West Bank city of

Ramallah.  Pls.' Mem. in Supp. of Mot. for Entry of Default at 6 (citing affidavit of Karen Kizer

and attached exhibits).  Service apparently was completed on August 7, 2005, and plaintiffs filed

proof of that service with the Court on January 5, 2006.

        Based on the foregoing, the Court concludes that plaintiffs have, in fact, served Hamas by

"internationally agreed means reasonably calculated to give notice," as required by the Federal

Rules of Civil Procedure, <u>see</u> Fed. R. Civ. P. 4(f)(1), and thus have satisfied the service

requirement of Rule 4(k)(2).

                2.        *Availability of State Court Jurisdiction*

        As the D.C. Circuit observed in <u>Mwani</u>, "[d]etermining whether a defendant is subject to

_____

        [15] Indeed, the recent advent of Hamas as the leading political party in the Palestinian
Authority bolsters this conclusion.

        [16] <u>Compare</u> <u>Estates of Ungar</u>, 304 F. Supp. 2d at 257-58 (approving of service of a Hamas
officer within the United States, pursuant to Fed. R. Civ. P. 4(h)(1)).

the jurisdiction of a court 'of any state,'" as required by Rule 4(k)(2), "presents no small problem."

417 F.3d at 11.   But rather than require courts to "ponderously 'traipse through the 50 states,

asking whether each could entertain the suit,'" the court of appeals adopted a rule that, whenever a

plaintiff invokes Rule 4(k)(2) as a basis for personal jurisdiction in federal court, the burden is on

the defendant to identify some state court where it could be sued (other than the state in which the

federal court resides, of course, because, if suit were proper in that state's court, invocation of

Rule 4(k)(2) would be unnecessary).   <u>Id.</u>   If the defendant does not do so (i.e., if the defendant

does not concede to the jurisdiction of another state), this requirement of Rule 4(k)(2) is presumed

to be met.   <u>Id.</u>; <u>see also</u> <u>Rubin v. Hamas-Islamic Resistance Movement</u>, No. 02-cv-975, 2004 WL

2216489, at *3 (D.D.C. Sept. 27, 2004) ("[T]o invoke Rule 4(k)(2), the plaintiffs need only certify

that 'to their knowledge, the defendant is not subject to jurisdiction in any one state.'").   Hamas, as

already noted, has not appeared to defend against this suit, and therefore it has not conceded to the

jurisdiction of any state.   Hence, the Court will presume that Hamas is "not subject to the

jurisdiction of the courts of general jurisdiction of any state."   <u>See</u> Fed. R. Civ. P. 4(k)(2).

> 3.   *Constitutional Requirements*

The D.C. Circuit's opinion in <u>Mwani</u> succinctly describes the due-process inquiry that the

Court must conduct in situations such as this -- where a plaintiff invokes Rule 4(k)(2) in an

attempt to establish specific jurisdiction over a foreign party who, although properly served with

notice of the action, neither consents to suit in the United States nor can be found here:

> Whether the exercise of jurisdiction is "consistent with the Constitution" for purposes of
> Rule 4(k)(2) depends on whether [the] defendant has sufficient contacts *with the United*
> *States as a whole* to justify the exercise of personal jurisdiction under the Due Process
> Clause of the Fifth Amendment.   The Clause "protects an individual's liberty interest in not
> being subject to the binding judgments of a forum with which he has established no
> meaningful 'contacts, ties, or relations,'"  and "requir[es] that individuals have 'fair warning

> that a particular activity may subject [them] to the jurisdiction of a foreign sovereign[.]'"
> Where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has
> not consented to suit there, this "fair warning" requirement is satisfied if the defendant has
> "purposefully directed" his activities at residents of the forum, and the litigation results
> from alleged injuries that "arise out of or relate to" those activities[.]

Mwani, 417 F.3d at 11-12 (emphasis supplied; internal citations and some internal quotation

marks omitted).  Moreover, the D.C. Circuit has made clear that personal jurisdiction "may attach

if the defendant's conduct is aimed at or has an effect in the forum" such that the defendant ought

to reasonably anticipate being haled into court there, even if the defendant lacks any physical

contacts with the forum.  GTE New Media Servs., Inc. v. BellSouth Corp., 199 F.3d 1343, 1349

(D.C. Cir. 2000) (quoting Panavision International, LP v. Toeppen, 141 F.3d 1316, 1321 (9th

Cir.1998)).

    This Court has no difficulty concluding that the conduct plaintiffs attribute to Hamas, if

proven, was calculated to cause injury to U.S. citizens (among others) and, predictably, did just

that.  As Judge Cassell of the District of Utah recently wrote, "[t]errorism cases provide textbook

examples of 'unabashedly malignant actions' aimed at the United States whose effects are 'directed

at [and] felt' here."  Morris, 415 F. Supp. 2d at 1336 (quoting Mwani, 417 F.3d at 13).  Although

most such cases have involved terrorist acts that targeted U.S. persons or interests with a

directness not evident in the facts alleged here (e.g., assaults on American servicemen or

embassies), it is nonetheless entirely foreseeable that an indiscriminate attack on civilians in a

crowded metropolitan center such as Tel Aviv will cause injury to persons who reside in distant

locales -- including tourists and other visitors to the city, as well as relatives of individuals who

live in the area.  The ripples of harm that flow from such barbarous acts rarely stop at the banks of

the Mediterranean Sea or the Jordan River, and those who engage in this kind of terrorism should

hardly be surprised to find that they are called to account for it in the courts of the United States --
or, for that matter, in any tribunal recognized by civilized peoples.

Furthermore, the effects of the September 19, 2002, Tel Aviv bombing by no means
represent an isolated contact between Hamas and the United States.  The Court takes judicial
notice of the findings of other federal courts in reaching the conclusion that Hamas has sufficient
financial and operational contacts with the United States as a whole to support personal
jurisdiction under Rule 4(k)(2) for claims brought by victims of terrorism.  See Estates of Ungar,
304 F. Supp. 2d at 256 ("Hamas has consistently conducted extensive fundraising, operational
planning, recruitment, propaganda, public relations, money laundering, investment, and
communication activities in at least six states (Texas, Louisiana, Missouri, Virginia, Illinois, New
York) and Washington, DC[,] over at least the past 12 years.");  Rubin, 2004 WL 2216489, at *3
(same).  There is, in other words, no constitutional infirmity whatsoever in subjecting Hamas to
the jurisdiction of this Court for purposes of the present lawsuit.

In light of the Court's conclusions that Rule 4(k)(2) provides a basis for Hamas's
"amenability to service of summons" for the ATA claim, and that the requirements of that Rule --
including evidence of proper service and "a constitutionally sufficient relationship between the
defendant and the forum" -- have been met here, the Court may exercise personal jurisdiction over
Hamas for purposes of the ATA claim.  Furthermore, because Hamas has not responded to the
duly served complaint within the time prescribed by Rule 12(a) of the Federal Rules of Civil
Procedure, the Court will direct the Clerk to enter Hamas's default in this civil action on the ATA
claim.  See Fed. R. Civ. P. 55(a).

**B.     Personal Jurisdiction over Hamas for Claims under Israeli Law**

With respect to plaintiffs' Israeli-law (ICWO) claims against Hamas, Rule 4(k)(2) is

unavailable as a means of establishing personal jurisdiction over Hamas because, by its clear

terms, Rule 4(k)(2) applies only to "claims arising under federal law."  Fed. R. Civ. P. 4(k)(2).

Nor may plaintiffs resort to the District of Columbia long-arm statute because, as they have

conceded by invoking Rule 4(k)(2) for the ATA claim, Hamas "is not subject to the jurisdiction of

the courts of general jurisdiction of any state" or the District of Columbia.  See id.  Nevertheless,

the unavailability of these long-arm provisions is not fatal to plaintiffs' attempt to bring the Israeli-

law claims here.  That is because the D.C. Circuit has adopted the doctrine of "pendent personal

jurisdiction," whereby a court may assert personal jurisdiction over a defendant "with respect to a

claim for which there is no independent basis of personal jurisdiction so long as it arises out of a

common nucleus of operative facts with a claim in the same suit over which the court does have

personal jurisdiction."  Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174,

1180 (9th Cir. 2004) (citing Oetiker v. Jurid Werke, G.m.b.H., 556 F.2d 1, 5 (D.C. Cir. 1977)

(recognizing precedents upholding the exercise of pendent personal jurisdiction)).  That is

precisely the situation that exists here, and hence this Court, in its discretion, "may assert personal

jurisdiction over the parties to the related [non-federal] claims even if personal jurisdiction is not

otherwise available."  See Poling v. Farrah, 131 F. Supp. 2d 191, 194 (D.D.C. 2001).

The Court, however, need not decide whether it would exercise its discretionary

jurisdiction over Hamas as to plaintiffs' Israeli-law claims because, notwithstanding the

availability of pendent personal jurisdiction, the Court also must take account of the related issue

of Hamas's capacity to be sued.  Here, the Court finds such capacity to be lacking with respect to

the ICWO claims because a suit against an unincorporated association to enforce a right arising

under the law of a foreign state is not cognizable in this Court.  See Fed. R. Civ. P. 17(b).

Unlike the claim by Avraham Sisso against Hamas under the ATA, the Israeli-law claims

do not fall within the exception of Rule 17(b) that permits "a partnership or unincorporated

association ... [to] be sued in its common name for the purpose of enforcing ... against it *a*

*substantive right existing under the Constitution or laws of the United States*," because the ICWO

causes of action do not arise out of the Constitution or federal law.  See id. (emphasis supplied).

Rather, they are based solely in Israeli law.  Hence, the default provision of Rule 17(b) applies to

those claims, and Hamas's "capacity to ... be sued shall be determined by the law of the state in

which the district court is held."  See id.; see also Klinghoffer v. S.N.C. Achille Lauro, 937 F.2d

44, 53 (2d Cir.1991) ("Under Rule 17(b) of the Federal Rules of Civil Procedure, the law of the

forum state determines the manner in which an unincorporated association must be sued, except

where the complaint alleges violations of 'substantive right[s] existing under the Constitution or

laws of the United States[.]' ....  Thus, if the claims asserted here are non-federal causes of action,

the complaints would have to comport with the law of [the forum.]").

In this case, the applicable law for determining party capacity is that of the District of

Columbia, cf. The Plan Comm. v. PricewaterhouseCoopers, LLP, 335 B.R. 234, 243 (D.D.C.

2005) ("[T]o proceed in this court on state common law claims ... a party may have the capacity to

sue only if the law of the District of Columbia permits it to sue."), and D.C. law does not permit

an unincorporated association to sue or be sued directly, Pritchett v. Stillwell, 604 A.2d 886, 889

(D.C. 1992) ("The common law of this jurisdiction is that neither a partnership nor an

unincorporated association may be sued in its own name."); Kauffman v. Anglo-American Sch. of

Sofia, 28 F.3d 1223, 1225 (D.C. Cir. 1994) (same); cf. The Plan Comm., 335 B.R. at 243 n.5 ("Because an unincorporated association is not recognized as a juridical entity in the District of Columbia, '[t]he general rule is that ... [it] must bring the action in the names of its individual members.'") (quoting 7 C.J.S. Associations § 41).  And, as far as this Court is aware, there is no recognized exception to that rule for situations such as this, where there is a *non-federal claim* against the unincorporated association that arises out of the same core of operative facts as a *federal claim* against the organization and capacity to be sued exists for the latter but not the former.  See Caliber Partners, Ltd. v. Affeld, 583 F. Supp. 1308, 1313-14 (N.D. Ill. 1984) (finding capacity lacking for state-law claims, pursuant to Rule 17(b), and rejecting plaintiffs' theory of "pendent capacity").[17]  Accordingly, the Court will not enter default against Hamas for the ICWO claims, and it will instead dismiss those claims, without prejudice, for failure to state a claim upon which relief may be granted.  See Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the foregoing reasons, and upon consideration of the entire record, the Court will dismiss plaintiffs' Israeli-law claims against Hamas and instruct the Clerk to record the defaults of each defendant as to the remaining claims.  A separate order has been issued herewith.

                                        /s/ John D. Bates
                                        JOHN D. BATES
                                 United States District Judge

Dated:    August 23, 2006

---

[17] Although fidelity to the plain language of Rule 17(b) may encourage forum shopping among federal districts in some limited circumstances, it nonetheless discourages forum shopping between state and federal courts.

Copies to:

Damara L. Griffith
COVINGTON & BURLING
1201 Pennsylvania Avenue, NW
Washington, DC  20004
Email: dgriffith@cov.com

Alan Vinegrad
COVINGTON & BURLING
1300 Avenue of the Americas
New York, NY  10019

*Counsel for plaintiffs*